Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bryan Kulp and Christina Kulp, and Veronica Rodriguez, each individually and on behalf of all others similarly situated, | Case No. 2:22-cv-9381 |
| *Plaintiffs*, | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| v. | |
| Munchkin, Inc., | |
| *Defendant*. | |

# Table of Contents

I.     Introduction.................................................................................................. 1

II.    Parties. ........................................................................................................ 2

III.   Jurisdiction and Venue................................................................................ 3

IV.    Facts. ........................................................................................................... 3

      A.    Defendant warrants that the Sturdy Potty Seat is safe for use by
            toddlers and children. ........................................................................ 4

      B.    Defendant's Sturdy Potty Seat is dangerously defective. ................. 4

      C.    Safe alternative designs that would eliminate the danger are readily
            available. ............................................................................................ 6

      D.    Consumers are not aware of the danger posed by Defendant's
            defective potty seats........................................................................... 8

      E.    Defendant unreasonably failed to warn consumers of the risk posed
            by the Sturdy Potty Seat................................................................... 10

      F.    Defendant knew of the defect. ......................................................... 12

      G.    Plaintiffs suffered injury due to the defective pee guards. ............. 15

      H.    Defendant's actions injured Plaintiffs and class members. ............. 17

V.     Class Action Allegations. .......................................................................... 18

VI.    Claims. ...................................................................................................... 20

VII.   No Adequate Remedy at Law..................................................................... 33

VIII.  Jury Demand. ............................................................................................ 33

IX.    Prayer for Relief. ....................................................................................... 34

## I.    Introduction.

1.    Defendant makes, markets, distributes, and sells the "Sturdy Potty Seat." The Sturdy Potty Seat is a child-sized toilet seat that fits into a standard toilet. It is intended to be used by toddlers and young children who are in the process of being potty trained.

2.    To stop urine from splattering outside of the toilet bowl, Defendant's Sturdy Potty Seat includes a "pee guard." This is shown below:



3.    The pee guard is made out of hard plastic. It forms a high lip at the front of the toilet seat.

4.    The design of the pee guard is dangerously defective.

5.    Due to the height and shape of the pee guard, its positioning at the front of the seat, and the hard plastic it is made of, the Sturdy Potty Seat can injure children when they attempt to climb off of the toilet. For example, when male toddlers and young children attempt to stand up after using the Sturdy Potty Seat, their genitals can become stuck or jammed within the pee guard. Additionally, both female and male toddlers can

injure themselves climbing off of the seat by hitting their pelvic or groin areas on the high hard lip of the guard. This design can, and has, caused serious and traumatic tearing and injury to children who use it.

6. Plaintiffs Bryan and Christina Kulp purchased the Sturdy Potty Seat for their 3-year-old son to use while potty training. The second time their son used it, however, his genitals became stuck in the pee guard when he was getting up from the toilet. This resulted in a traumatic injury and a trip to the emergency room.

7. Plaintiff Veronica Rodriguez also purchased the Sturdy Potty Seat to potty train her young daughter. Her daughter was also injured while using the seat. When her young daughter attempted to climb off of the seat, she hit and scraped her pelvic area on the hard lip of the pee guard, causing injury.

8. Fortunately, the Kulps' young son and Mrs. Rodriguez's young daughter recovered from their physical injuries. Defendant's defective product, however, remains on the market. It continues to be used by tens of thousands of children and toddlers every day. This presents an unreasonable risk of serious injury. And if the parents knew the truth, they would immediately stop using the Sturdy Potty Seat. Plaintiffs bring this lawsuit to force Defendant to recall its unreasonably dangerous products and issue full refunds to parents who purchased them.

## II. Parties.

9. Plaintiffs Bryan Kulp and Christina Kulp are citizens of Pennsylvania, domiciled in West Chester.

10. Plaintiff Veronica Rodriguez is a citizen of California, domiciled in Ontario.

11. The proposed class and subclasses (identified below) include citizens of every State within the United States.

12. Defendant Munchkin, Inc. is a Delaware corporation with a principal place of business in Los Angeles, California.

13. Defendant makes, distributes, sells, and markets the Sturdy Potty Seat, and has done so throughout any applicable statute of limitations period.

**III.    Jurisdiction and Venue.**

14.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

15.     The Court has personal jurisdiction over Defendant because Defendant has its principal place of business in California.

16.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d).  Defendant would be subject to personal jurisdiction in this District if this District were a separate state.  Defendant has its principal place of business in this district.

**IV.    Facts.**

17.     Defendant makes, markets, and sells the Sturdy Potty Seat.  The Sturdy Potty Seat is a child-sized toilet seat that fits into a standard toilet.  A picture is shown below:



18.     Defendant sells the product directly through its website, as well as through third-party vendors such as Target.

**A.    Defendant warrants that the Sturdy Potty Seat is safe for use by toddlers and children.**

19.    Defendant's products are specifically made for use by toddlers and children, and marketed as such.

20.    By making and selling a product specifically designed for children, and marketing it to parents of young children for use by their children, Defendant is representing to consumers that their products are safe for use by small children (as long as they are used as intended).  Those intended uses include toddlers sitting on them while they are positioned on the toilet.  In fact, that is the only intended use of the product.

21.    The packaging of the Sturdy Potty Seat further represents that the Sturdy Potty Seat is safe for use by small children to use the bathroom.  The packaging includes a sequence of images of a small child safely and happily using the Sturdy Potty Seat for this purpose without injury.  It depicts her holding the Sturdy Potty Seat and smiling, placing the Sturdy Potty seat on a toilet, and walking away from the toilet smiling.  To reasonable consumers, this sequence of images conveys that the Sturdy Potty Seat is safe for small children and toddlers to use in this manner.

**B.    Defendant's Sturdy Potty Seat is dangerously defective.**

22.    Sturdy Potty Seats have a high front lip intended to serve as a "pee guard" to stop urine from splattering outside of the toilet.  The pee guard is intended to deflect urine back inside the toilet bowl.

23.    The pee guard, like the rest of the seat, is made of a molded hard plastic.

24.     When a male child uses a Sturdy Potty Seat as intended, his groin area is positioned at the front of the seat, near the pee guard.



25.     Due to the positioning of the pee guard, depending on the size of the child and his position, the child's genitals may be positioned under the pee guard, and may even be in contact with the pee guard while the child is sitting on the toilet.

26.     Moreover, when a child attempts to stand up by pushing himself forward so that his legs can reach the ground, his genitals can become stuck under the lip of the pee guard.  Due to the pee guard's material, skin can easily stick to the upper lip if it comes in contact with it (either when the child is sitting on the toilet, or when he is trying to get up).

27.     In addition, because the plastic that the guard is made of is hard and inflexible, if a child's genitals become lodged in the pee guard while he is standing up, there is no flexibility or elasticity allowing genitals to safely escape.  Instead, male genitals can become stuck under the hard lip of the pee guard.  As the child's body is propelled

forward, their genitals remain trapped.

28.     This can cause tearing, laceration, and injury to a child's genitals and groin. Such injuries occur with normal and expected use of the Sturdy Potty Seats.

29.     Female children can also be injured through normal use of the Sturdy Potty Seat. Because the pee guard forms a high and hard lip at the front of the seat, a child of any gender can easily hit their pelvic or groin area on the guard when they attempt to climb off of the seat. In addition, because the pee guard has a hard plastic lip, children can be scraped or lacerated when they hit the edge of the lip as they dismount.

30.     Furthermore, the Sturdy Potty Seat is equipped with "easy-grip handles [that] add stability."[1] The handles, however, exacerbate the problem presented by the pee guard. When children, like the Kulps' young son, as noted below, use the handles to push up and off the seats, there is added momentum pushing them upward. This momentum can cause children to hit and scrape themselves even harder on the pee guard, and creates additional force pushing against children's genitals when they get stuck in the guard. This can worsen injuries and tearing.

**C.     Safe alternative designs that would eliminate the danger are readily available.**

31.     Injury could be avoided if Defendant used a safe alternative design for the seats. Alternative design options that include safe pee guards without sacrificing effectiveness are readily available.

32.     For example, Defendant could have designed the pee guard to form a solid closed-off bump on the seat. Other manufacturers of potty training seats have done so[2]:

---

[1] https://www.munchkin.com/sturdy-potty-seat-grey.html
[2] https://www.amazon.com/Primo-Ducka-Toilet-Reducer-White/dp/B000I62M84

33.     A closed-lip design still allows the pee guard to serve its intended purpose—stopping urine from splattering outside of the toilet—without the risk of children's genitals getting trapped within an open plastic lip.  It also eliminates the risk that children will scrape or lacerate themselves by hitting the hard, open lip of the pee guard.

34.     Additionally, Defendant could have designed the pee guard out of softer material.  Unlike hard plastic, softer materials, like rubber or softer plastic, would not cause children's genitals to get stuck and torn, nor would they cause scraping or injury if a child hit their groin against the guard.  Instead, the softer materials would give way. This would allow children to bump their groin or pelvic areas on the guard without scraping or injuring their skin, and would similarly permit children's genitals to come out of the seat without injury.  Other potty seats have soft pee guards.[3]

35.     In fact, Defendant itself produces a potty training seat that includes a "[f]lexible, soft-touch splash guard":[4]

---

[3] https://www.buybuybaby.com/store/product/the-first-years-soft-grip-potty-trainer-seat-in-grey/5503425?skuId=69575713
[4] https://www.munchkin.com/grip-potty-seat-grey.html



36.    Thus, Defendant is aware that it need not include a hard plastic pee guard in order for the potty seat to function as intended.  With either closed-lipped or softer pee guards, Sturdy Potty Seats could easily be designed in a safer fashion without sacrificing functionality.

**D.    Consumers are not aware of the danger posed by Defendant's defective potty seats.**

37.    Consumers—largely the parents and caretakers of young children and toddlers—reasonably expect that Sturdy Potty Seats are safe for their intended purpose. Consumers would not anticipate that a product specifically made for use by children and marketed as such is designed in a manner that could seriously injure their children with normal use.

38.    Defendant's packaging of Sturdy Potty Seats further assures consumers that the product is safe and fit for use as a potty training aid.  The packaging includes pictures of a young child placing the seat for use, and includes information about safety features

like the "non-slip edge":



39.    In fact, however, Defendant has chosen to design Sturdy Potty Seats in a dangerous manner, which makes them unusable for their intended purpose.  The pee guard's height, positioning, open shape, and its construction out of a hard plastic create a serious risk that children will severely injure their genitals or hit their groins and pelvic areas with normal use.

40.    Consumers cannot reasonably know about the dangerous nature of the seats at the point of sale, and cannot discover the danger presented by the pee guard with a reasonable investigation at the time of purchase.  Although the pee guard is visible to consumers, they do not realize that, even when the Sturdy Potty Seat is used as intended, the pee guard can cause boy toddlers' genitals to become stuck and cause

injuries, lacerations, and tearing.  Nor do they expect that, even with normal use, all children can scrape and injure their groins while climbing off the seat.  They reasonably expect that Defendant—who has far greater expertise in product safety and specifically product safety for children—would not market a product that was unsafe.  Plus, although it is hard, the lip of the pee guard is not noticeably sharp.  To lay consumers who are not experienced in product design and do not realize that, when the force of a toddler trying to get off a seat is applied, even a dull surface can cause serious injuries— the seat appears safe.

**E.    Defendant unreasonably failed to warn consumers of the risk posed by the Sturdy Potty Seat.**

41.    Defendant does not include any warning to put consumers on notice of the dangers posed by the pee guard of the Sturdy Potty Seat.  Defendant could have warned consumers about the dangers presented by the pee guard.

42.    Indeed, Sturdy Potty Seat packaging does contain a warning, cautioning consumers not to leave children unattended and not to allow them to place the seat on the head:



**⚠ WARNING:** Wash and inspect before use. Discard and replace at first sign of weakness or damage. Do not leave child unattended. Indoor use only. Discard all packaging components before use. Do not allow child to place on or over the head.

43.    This warning, however, does nothing to alert consumers to the very real risk that the product can cause serious injury to children's genitals and groin areas, even when they are sitting on the seat (not putting it around their head) and even when the child is being supervised.

44.    Thus, consumers are left without warning about the dangers presented by Sturdy Potty Seats.

45.    Far from warning consumers about the defect, Defendant's website and

other materials consistently tout the safety of its products, including the Sturdy Potty Seat. Defendant's website stresses that the "safety and well-being of [] consumers is our top priority." It represents that the company abides by safety regulations and has products regularly tested:

> **What does Munchkin do to ensure the quality and safety of its products?**
>
> For more than 25 years, Munchkin has been a trusted brand that retailers and parents have depended on with confidence, and we work hard to maintain that trust. The safety and well-being of our consumers is our top priority. All of our products are independently tested and meet or exceed the safety standards for our industry as established by both the Consumer Product Safety Commission (CPSC) and American Society for Testing and Materials (ASTM) International. We are constantly in touch with these national safety organizations to ensure we are up-to-date with clear scientific findings and any changes in regulations. In addition, follow-up tests are conducted on all of our products at periodic intervals after they launch to ensure each product's continued safety.

46. Defendant's 2022 "Sustainability Report" again stresses that the company's products are safe, noting that Munchkin is "inherently invested in providing a safe and comfortable beginning for babies and new parents."[5] The report additionally relays that plastic is "inarguably, one of the safest materials to use in baby items."[6]

47. Defendant's website also emphasizes the Sturdy Potty Seat's stability, security, and comfort for young children, and claims it will "[c]alm your little one's fears of falling in the big toilet." The site further claims that the seats will help toddlers gain "confidence" with using the toilet, and boasts about the "built in pee guard."

---

[5] https://www.munchkin.com/assets/Munchkin_Sustainability_Report_2022.pdf
[6] *Id.*

## Details

Calm your little one's fears of falling in the big toilet with Munchkin's Sturdy™ Potty Seat. The easy-to clean potty seat fits most standard toilets and is contoured to hold your child securely in place. Easy-grip handles add stability and a non-skid edge prevents the seat from moving around - giving your little one more confidence when navigating tricky new waters. Also included are a built in pee guard and "feet" for easy stand-up storage. You will no longer toil through toilet training with this comfortable potty seat.

## Potty like a rock star.

- Contoured to hold child securely in place

- Non-skid edge ensures that seat doesn't move

- Built-in handles for added security

- "Feet" for easy stand-up storage

48.     Thus, Defendant did nothing to warn consumers about the dangers presented by Sturdy Potty Seats.

\* \* \*

49.     In short, Plaintiffs and class members purchased a dangerous product that is unusable for its intended central purpose: the safe toilet training of toddlers and young children.

**F.     Defendant knew of the defect.**

50.     Consumers have repeatedly posted reviews and incident reports stating that Sturdy Potty Seats are dangerous and that their children have been seriously injured by the pee guards.

51.     Examples of such reports, from both the U.S. Consumer Product Commission and retailers Amazon.com and Target, are included below:

**Incident Details**

**Incident Description:** This potty chair is not only wobbly and prone to make children fall when trying to stand up, it is dangerous! The splash guard is made of a plastic that causes the foreskin to stick to it. So when the child tries to stand up, the base of the penis sticks to the plastic and can cause a tear. My son tried to stand up from this seat and fell off the toilet with his penis stuck in the splash guard. His skin tore at the base about 3cm and required stitches. The doctor was patient enough to apply skin glue to avoid stitches. So I am reporting this to let other parents know that this potty seat caused my 3 year old son to get his penis glued back together because of the damage caused. There must be a legal case against this potty seat. I know I am not the only one who's child was mutilated by it.

**Incident Date:** 5/19/2022

**Incident Location:** Home/Apartment/Condominium

---

★☆☆☆☆ **Do not recommend for boys!**
Reviewed in the United States on October 17, 2019
Color: Green | **Verified Purchase**

This seat cut my sons genitals as he was getting up from the toilet! I would not recommend this seat for any potty training boy.

One person found this helpful

---

★☆☆☆☆ **Great seat BUT my son sliced his penis on the splash guard**
Reviewed in the United States on January 10, 2017
Color: Green | **Verified Purchase**

We've owned this seat for 5 days and I loved it for the 1st 3 days. No mess on the seat. No place for the pee to hide. A great solution for us. Then last night my son tipped over to try to get a book and started to lose his balance and almost fell and somehow he sliced his penis on the splash guard. I still don't know how it happened since it's not sharp but it's not soft either... the Dr told me that if it was any deeper I'd have to take him to the Children's Hospital for him to be sedated so it could be treated. Needless to say he's now terrified of all potty seats and scared to look down in case he sees the boo-boo on his "peanuts". He hasn't had an accident in 2 weeks and he's had 2 already today. I would still use this seat for the cleanliness aspect alone but since my son never stops moving won't. Just beware if you have an active toddler boy that might not sit still on the potty!

2 people found this helpful

---

★☆☆☆☆ **Caution if you have boys!!**
Reviewed in the United States on January 25, 2021
Color: Green

My son has cut himself using this potty training seat twice. He leaned forward to try to get off of the potty and cut himself on the splash guard area in the process. This potty seat has earned it's place in the trash.

One person found this helpful

⭐☆☆☆☆ **Mutilated my son's genitals!**

Reviewed in the United States on May 21, 2022

Color: Gray | **Verified Purchase**

This potty chair is not only wobbly and prone to make children fall when trying to stand up, it is dangerous! The splash guard is made of a plastic that causes the foreskin to stick to it. So when the child tries to stand up, the base of the penis sticks to the plastic and can cause a tear. My son tried to stand up from this seat and fell off the toilet with his penis stuck in the splash guard. His skin tore at the base about 3cm and required stitches. The doctor was patient enough to apply skin glue to avoid stitches. So I am writing this review to let other parents know that this potty seat caused my 3 year old son to get his penis glued back together because of the damage caused. There must be a legal case against this potty seat. I know I am not the only one who's child was mutilated by it.

2 people found this helpful

⭐☆☆☆☆ **CAUTION not for boys**

Reviewed in the United States on November 23, 2020

Color: Green | **Verified Purchase**

Seat does not suction to the toilet and slides all over every time my son moves. The lip on the front is also sharp on the underside and I would absolutely not recommend for boys. My 3 year old leaned forward, fell off the seat, put a 2 cm gash on his privates and ended up in the ER getting stitches.

2 people found this helpful

### dangerous



ruby z · 2 years ago

do not recommend. The front bump hit my daughters private hard. I don't even understand what that bump is there for.

52.     Like other large producers of consumer products (especially products for use by children), Defendant monitors and keeps track of consumer reviews and complaints, including on retail sites like Amazon.com and Target.  This is diligence that large companies like Defendant routinely do when selling a consumer product. Defendant even responds to consumer questions and concerns on Amazon and Target.[7]

53.     Additionally, the U.S. Consumer Product Commission informs

---

[7]https://www.amazon.com/ask/questions/asin/B01C431OA0/ref=ask_dp_dpmw_ql_hza?isAnswered=true; https://www.target.com/p/munchkin-sturdy-potty-seat-white/-/A-14011550# (responding to consumer questions and complaints in the Questions and Ratings sections of the product page)

manufacturers whenever they receive a consumer complaint about a dangerous product.

54.    Thus, Defendant is aware that Sturdy Potty Seats have repeatedly caused injury to children, and knows that the pee guard is dangerously defective.

**G.    Plaintiffs suffered injury due to the defective pee guards.**

*Bryan and Christina Kulp*

55.    On or about July 23, 2022, Mr. and Mrs. Kulp purchased a Sturdy Potty Seat from a Target in Exton, Pennsylvania.

56.    Mr. and Mrs. Kulp purchased the product for personal, family, or household use—namely, for use in safely helping their young son with potty training.

57.    In purchasing the item, Mr. and Mrs. Kulp relied on Defendant's position as a merchant of toddler and children's products for assurances that the product would be safe for use by their 3-year-old son. They also saw and relied on the representations on the packaging depicting a child safely using the Potty Seat.

58.    On July 24, 2022, the Kulps' son told Mrs. Kulp he needed to use the bathroom. Mrs. Kulp set up the new Sturdy Potty Seat for only the second time. Mrs. Kulp set up the seat in the normal and expected manner, ensuring that the seat was securely placed within the larger toilet bowl.

59.    The Kulps' son proceeded to use the seat in the normal and expected manner while Mrs. Kulp supervised. When he finished, he used the seat's attached handles to help him stand up. As he rose, however, his genitals stuck to and were trapped within the pee guard. His upward momentum, made worse by his use of the handles to push him up, propelled his body forward while his genitals remained stuck within the guard. This resulted in serious and painful tearing at the base of his penis.

60.    Due to the severity of the injury, the Kulps quickly consulted their pediatrician and were told that their son needed to be taken to the Children's Hospital of Philadelphia's emergency room to be checked for internal injuries and to determine if stitches were needed. Because of the placement of the injury, the emergency room doctor decided that stitches would be more traumatic than beneficial, and the Kulps

were directed to provide proper care and treatment until the wound healed.

61.    Mr. and Mrs. Kulp's son suffered a painful and traumatic injury as a result of the Sturdy Potty Seat's design.

62.    Beyond this, the Kulps suffered an economic injury, because they purchased a seat that was worthless for its intended purpose (and which they certainly would not have purchased had they known the truth).

63.    Before purchasing the seat, Mr. and Mrs. Kulp did not and could not have known that the product suffered from a significant defect. Had Mr. and Mrs. Kulp known the truth, they would not have purchased the seat. Additionally, as a result of the defect and the injury sustained by their son, the Kulps have not and will not use this seat again. Likewise, if the truth were known, other consumers would not purchase the seat either, which would drive down the demand for, and consequently the price of, the seat. So apart from purchasing a product they would not have bought at all, the Kulps also overpaid for that product.

64.    Thus, the Kulps suffered economic injury as a direct result of Munchkin's actions. The Kulps would still purchase another Sturdy Potty Seat from Defendant if the product was re-designed to make it safe. Plaintiffs, however, face an imminent threat of harm because they will not be able to rely on representations of safety and the comprehensiveness of warnings in the future, and thus will not be able to purchase the product.

*Veronica Rodriguez*

65.    In May 2022, Mrs. Rodriguez purchased a Sturdy Potty Seat from a Target in San Bernardino County, California.

66.    Mrs. Rodriguez purchased the product for personal, family, or household use—namely, for use in safely helping her young daughter with potty training.

67.    In purchasing the item, Mrs. Rodriguez relied on Defendant's position as a merchant of toddler and children's products for assurances that the product would be safe for her 2-year-old daughter. She also saw and relied on the representations on the

packaging depicting a child with the potty seat.

68. Mrs. Rodriguez's daughter suffered repeated physical injury as a result of the Potty Seat's design. On multiple occasions, when her daughter attempted to climb off of the seat to reach the ground, she hit and scratched her pelvic area on the high lip of the pee guard. After several such occurrences, Mrs. Rodriguez stopped using the seat to prevent further injury to her daughter.

69. In addition to her daughter's physical injury, Mrs. Rodriguez suffered an economic injury. Not only did Mrs. Rodriguez overpay for the product because of a price premium stemming from Defendant's false representations, but she purchased a product worthless for its intended purpose. She did not and could not have known that the product suffered from a significant defect. Had she known the truth, she would not have purchased the seat.

70. Like the Kulps, Mrs. Rodriguez would still purchase another Sturdy Potty Seat from Defendant if the product was re-designed to make it safe. She faces an imminent threat of harm, however, because she cannot rely on representations of safety and the comprehensiveness of warnings in the future, and thus will not be able to purchase the product.

**H. Defendant's actions injured Plaintiffs and class members.**

71. Defendant's false representations of safety and its failure to warn about the dangerous pee guards allowed it to charge more for Sturdy Potty Seats than it could have had the defect been disclosed to consumers. Consumers would not have bought the product, or, at a minimum, would have paid substantially less for it, had they known that it creates a serious risk of injury to young children. Stated another way, if Defendant included a warning disclosing the danger presented by the pee guards, demand would quickly drop, which would cause the market price of the product to plummet. Thus, as a result of Defendant's misrepresentations and omissions, Plaintiffs and class members were charged a price premium and sustained economic injuries.

72. In addition, consumers purchase potty training seats for the specific

purpose of safely aiding their children in using standard-sized toilets. Training seats are specifically intended to assist in the toilet training process while calming children's fears and stopping them from painfully falling into or off of larger toilets. Sturdy Potty Seats, however, do not keep children safe during potty training—instead, they endanger them. As a result, the products that Plaintiffs and class members received in exchange for the purchase price are worthless for their intended purpose. So, the economic injury suffered by Plaintiffs and class members consists of the entire purchase price of the Sturdy Potty Seats because what they received was useless for its intended purpose.

**V.    Class Action Allegations.**

73.    Plaintiffs bring claims on behalf of themselves as well as (a) a nationwide class of consumers who purchased the Munchkin, Inc. Sturdy Potty Seat during the applicable statute of limitations; (b) for certain claims, a subclass of consumers who purchased the Sturdy Potty Seat in Pennsylvania; and (c) for certain claims, a subclass of consumers who purchased the Sturdy Potty Seat in California.

74.    The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity*

75.    The proposed class(es) contain members so numerous that separate joinder of each member of the class is impractical. Based on the pervasive distribution of Munchkin products, there are tens of thousands of proposed class members (or more).

### Commonality

76. There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitation:

- Whether the Sturdy Potty Seats pose a safety risk to consumers;
- Whether the seats are fit for their ordinary and intended use;
- Whether Defendant engaged in an unlawful deceptive practice in marketing and selling the product as is;
- Whether Defendant was unjustly enriched by the sale of defective seats;
- Whether Plaintiffs suffered ascertainable loss as a result of Defendant's conduct;
- Whether Defendant should be enjoined from further sales of the seats;
- What damages are needed to compensate Plaintiffs and the proposed class(es).

### Typicality

77. Plaintiffs' claims are typical of the proposed class. Like the proposed class, Plaintiffs purchased the Munchkin, Inc. Sturdy Potty Seat.

### Adequacy

78. The interests of the members of the proposed class and subclass will be adequately protected by Plaintiffs and their counsel. Plaintiffs' interests are aligned with, and do not conflict with, the interests of the members of the proposed class or subclasses that they seek to represent. Moreover, Plaintiffs have retained experienced and competent counsel to prosecute the class and subclasses' claims.

### Predominance and Superiority

79. The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that the same product is found unfit for its ordinary use for some proposed class members, but not for others. Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and

factual questions arise from certain central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member.  For example, a core liability question is common: whether Defendant has made and marketed a defective product unfit for its ordinary use.

80.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### Count I: Breach of Express Warranty

### (on behalf of Plaintiffs and the Nationwide Class)

81.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

82.    Plaintiffs bring this count individually and for the Nationwide Class.  In the alternative, Plaintiff Rodriguez brings this cause of action on behalf of herself and the California Subclass, and Plaintiffs Bryan and Christina Kulp bring this cause of action on behalf of themselves and the Pennsylvania Subclass.

83.    As detailed above, Defendant makes, markets, and sells the Sturdy Potty Seat.

84.    Defendant expressly warrants that its products are safe and fit for use by children.

85.    As detailed above, Defendant markets the product with photos of young children using the seat successfully.  This is an affirmation of fact about the seats (i.e., a representation that the seats will be safe for use by children to go to the bathroom) and a promise relating to the goods.

86.    This warranty was part of the basis of the bargain, and Plaintiffs and class

members saw and relied on this warranty.

87. In fact, the seats do not conform to these express representations because the seats are not safe for children to use to go to the bathroom.

88. Plaintiffs provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's headquarters. Plaintiffs Bryan and Christina Kulp sent a notice letter on October 17, 2022. Plaintiff Veronica Rodriguez sent a notice letter on December 8, 2022.

89. Plaintiffs and class members were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased the Sturdy Potty Seat if they had known that the product was unsafe for children, or (b) they overpaid for the product because the seat is sold at a price premium due to the warranty of safety.

## Count II: Breach of Implied Warranty of Merchantability
### (on behalf of Plaintiffs and the Nationwide Class)

90. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

91. Plaintiffs bring this count individually and for the Nationwide Class. In the alternative, Plaintiff Rodriguez brings this cause of action on behalf of herself and the California Subclass, and Plaintiffs Bryan and Christina Kulp bring this cause of action on behalf of themselves and the Pennsylvania Subclass.

92. The Uniform Commercial Code § 2-314 states that "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." "Merchantable" goods must be "fit for the ordinary purposes for which the goods are used."

93. Defendant is and was, at all relevant times, a merchant with respect to baby and toddler products, and with respect to bathroom training products in particular. The Sturdy Potty Seat constitutes a "good" under the UCC.

94. Plaintiffs and class members purchased the Sturdy Potty Seats.

95.     As the manufacturer of the seats, Defendant impliedly warranted to Plaintiffs and the class that the seats were of merchantable quality and were safe for their ordinary use.  In fact, the seats, when sold and at all times thereafter, were not in merchantable condition and were not fit for the ordinary purpose for which toilet training seats are used.  Specifically, the seats are inherently flawed given a defect in design making them unsafe for children.  The defective design makes them unfit for ordinary purposes even when used correctly.

96.     Thus, Defendant breached the implied warranty of merchantability in connection with the sale and distribution of the seats.

97.     Plaintiffs provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's headquarters.  Plaintiffs Bryan and Christina Kulp sent a notice letter on October 17, 2022.  Plaintiff Veronica Rodriguez sent a notice letter on December 8, 2022.

98.     Plaintiffs and the class were foreseeable third-party beneficiaries of Defendant's sale of the seats.  Defendant sells seats to retailers for distribution and sale to consumers such as Plaintiffs and class members.

99.     Defendant's breach directly caused Plaintiffs and class members harm.  Had Defendant not impliedly warranted that the seats were fit and safe for their ordinary purpose, Plaintiffs and class members would not have bought the products.

### Count III: Breach of Implied Warranty of Fitness
### (on behalf of Plaintiffs and the Nationwide Class)

100.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

101.     Plaintiffs bring this count individually and for the Nationwide Class.  In the alternative, Plaintiff Rodriguez brings this cause of action on behalf of herself and the California Subclass, and Plaintiffs Bryan and Christina Kulp bring this cause of action on behalf of themselves and the Pennsylvania Subclass.

102.     The Uniform Commercial Code § 2-315 states that where a seller "has

reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

103.    Plaintiffs and class members purchased Munchkin Inc. Sturdy Potty Seats for the particular purpose of safely potty training young children.

104.    Defendant knew, or had reason to know, that Plaintiffs and class members were purchasing the seats for the particular purpose of potty training toddlers and young children.  Defendant is aware that consumers purchase potty training seats to teach children to use adult-sized toilets, and to do so safely.

105.    Defendant markets itself as a knowledgeable and effective developer and purveyor of baby and toddler products.

106.    Defendant knew, or had reason to know, that Plaintiffs and class members would justifiably rely on Defendant's particular skill and knowledge of toddler products in selecting or furnishing products suitable for toilet training.

107.    Plaintiffs and class members did justifiably rely on Defendant's judgment and skill.

108.    Due to the defect in the pee guards, the seats were not suitable for their intended purpose.

109.    Thus, Defendant breached their implied warranty of fitness concerning the seats.  Plaintiffs provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's headquarters.  Plaintiffs Bryan and Christina Kulp sent a notice letter on October 17, 2022.  Plaintiff Veronica Rodriguez sent a notice letter on December 8, 2022.

110.    As a result of the breach, Plaintiffs and the class suffered economic harm and damage.  The seats' unsuitability as a potty training tool was a substantial factor in causing their harm.

## Count IV: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL)

**(on behalf of Plaintiffs Bryan and Christina Kulp and the Pennsylvania Subclass)**

111.  Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

112.  Plaintiffs Bryan and Christina Kulp bring this count individually and for the Pennsylvania Subclass.

113.  The Kulps and the Pennsylvania Subclass members are "persons" under UTPCPL, 73 P.S. § 201-2.

114.  The Kulps and the Pennsylvania Subclass members purchased Sturdy Potty Seats primarily for personal, household, or family use.

115.  Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined by the UTPCPL, 73 P.S. § 201-2.

116.  Pennsylvania law bars "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. § 201-3. In particular, the law bars "[r]epresenting that goods or services have … characteristics … uses, benefits or quantities that they do not have" and engaging in "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2.

117.  By misrepresenting that the seats were safe for their ordinary purpose, and by omitting any warning about the defect in the pee guards, Defendant engaged in fraudulent and deceptive conduct which led Plaintiffs and Pennsylvania Subclass members to misunderstand the quality of their products.

118.  Defendant knew that the Sturdy Potty Seat suffered from a dangerous defect, but still represented that product was safe and fit for use as a toilet training tool. Defendant failed to warn consumers about the defect making the pee guard unsafe for children. Whether the product is safe for children is material to whether consumers buy the product.

119.    Defendant intended that consumers would believe and rely on the representation that Sturdy Potty Seats were safe for use.

120.    Sturdy Potty Seats are not safe and can cause serious injury to children.

121.    Defendant had superior knowledge of the product as compared to consumers, and Defendant knew or should have known about Sturdy Potty Seats' dangerous defect.  Under Pennsylvania law, Defendant had a duty to warn consumers about dangerous defects in their products that create serious risks with ordinary use. Defendant had a duty to warn because, as alleged in greater detail above, consumers cannot reasonably know about the dangerous nature of the seats at the point of sale, and cannot discover the danger presented by the pee guard with a reasonable investigation at the time of purchase.

122.    Reasonable consumers expect that toilet training seats marketed for toddlers are safe for use by young children.  The Kulps and subclass members justifiably relied on Defendant's representation of the seats as fit for use as a toilet training tool and as safe for use by young children, as well as their failure to warn about any defects to the pee guard.

123.    The Kulps and subclass members would not have bought the seats had Defendant warned them that the products presented a serious risk of injury to young children.  Thus, Plaintiffs and subclass members suffered economic injury as a result of Defendant's deception.  All purchasers of Sturdy Potty Seats suffered ascertainable loss and damages as a direct and proximate result of Defendant's deceptive conduct.

124.    Plaintiffs and subclass members are entitled to recover actual damages or $100, whichever is greater.  73 P.S. § 201-9.2.  They are also entitled to costs and reasonable attorneys' fees.

### Count V: Violation of California's Unfair Competition Law (UCL)
### (on behalf of Plaintiff Rodriguez and the California Subclass)

125.    Plaintiff Rodriguez incorporates by reference and re-alleges each and every factual allegation set forth above as though fully set forth herein.

126.    Plaintiff Rodriguez brings this cause of action on behalf of herself and members of the California Subclass.

127.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

### The Unlawful Prong

128.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.

### The Fraudulent Prong

129.    As alleged in detail above, Defendant's representations that the Sturdy Potty Seat was safe and fit for its ordinary purpose and its omissions concerning the product's defect were false and misleading.  Defendant's misrepresentations and omissions were likely to deceive, and did deceive, Plaintiff and reasonable consumers.

### The Unfair Prong

130.    Defendant violated established public policy by violating the CLRA and FAL, as alleged below and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

131.    Defendant's conduct caused substantial injury to Plaintiff and subclass members.  The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct (which is none).  Distributing unsafe children's products has no public utility at all.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Selling products unsafe and unfit for their intended purposes only injures healthy competition and harms consumers.

132.    Plaintiff Rodriguez and the subclass could not have reasonably avoided this injury.  As alleged above, Defendant's false representations and omissions were deceiving to reasonable consumers.

133.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

134. For all prongs, Plaintiff Rodriguez saw and reasonably relied on Defendant's false representations and omissions when purchasing the Sturdy Potty Seat.

135. Defendant falsely represented that its product was safe for use by young children, while omitting any warning of the serious safety defect caused by the pee guard. Defendant knew of the defect, but actively concealed it. Defendant should have, but did not, warn consumers of the pee guard's propensity to injure young children. This warning could have been included on the packaging for the product. But Defendant did not include any such warning. Instead, as further alleged above, the packaging instead represents that the Sturdy Potty Seat is safe for use by small children to use the bathroom. It does not contain any warning about the risk of injury caused by the pee guard.

136. Defendant had a duty to warn of the defect. The defect was central to the Sturdy Potty Seat's function (i.e., its safety as a potty training tool for young children), and because consumers could not reasonably know the product was defective, Defendant had exclusive knowledge of the defect. Still, Defendant actively concealed the defect from consumers by failing to disclose it on the product's packaging.

137. Defendant's false representations and omissions were material. Plaintiff and other reasonable consumers would not have purchased the product had they known the product was unsafe. Thus, subclass-wide reliance can be inferred. Defendant's false representations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decisions of class members.

138. Plaintiff Rodriguez and subclass members were injured as a direct and proximate result of Defendant's conduct because: (a) they would not have purchased the Sturdy Potty Seat if they had known it was dangerous for young children; (b) they overpaid for the product because the product is sold at a price premium due to Defendant's false representations and omissions; or (c) they received a product that is worthless for its intended purpose.

## Count VI: Violation of California's Consumer Legal Remedies Act (CLRA)
### (on behalf of Plaintiff Rodriguez and the California Subclass)

139.    Plaintiff Rodriguez incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

140.    Plaintiff Rodriguez brings this cause of action on behalf of herself and members of the California Subclass.

141.    Plaintiff Rodriguez and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

142.    Plaintiff Rodriguez, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

143.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

144.    As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and other members of the California Subclass that the Sturdy Potty Seat is safe and fit for ordinary use by children, when in fact, the Sturdy Potty Seat is dangerous for children and use can cause serious injury.  Defendant has also violated the CLRA by failing to warn of a material defect with the product.

145.    As a result of engaging in such conduct, Defendant has violated California Civil Code §§ 1770(a)(2), (a)(5), (a)(7), and (a)(9).

146.    Defendant's conduct was likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew that its product was unsafe and that presenting it as fit for use by young children was deceptive.

147.    Plaintiff Rodriguez saw and reasonably relied on Defendant's false representations and omissions when purchasing the Sturdy Potty Seat.

148.    Defendant falsely represented that its product was safe for use by young

children, while omitting any warning of the serious safety defect caused by the pee guard. Defendant knew of the defect, but actively concealed it. Defendant should have, but did not, warn consumers of the pee guard's propensity to injure young children. This warning could have been included on the packaging for the product. But Defendant did not include any such warning. Instead, as further alleged above, the packaging instead represents that the Sturdy Potty Seat is safe for use by small children to use the bathroom. It does not contain any warning about the risk of injury caused by the pee guard.

149. Defendant had a duty to warn of this defect. The defect was central to the Sturdy Potty Seat's function (i.e., its safety as a potty training tool for young children), and because consumers could not reasonably know the product was defective, Defendant had exclusive knowledge of the defect. Still, Defendant actively concealed the defect from consumers by failing to disclose the defect on the product's packaging.

150. Defendant's false representations and omissions were material. Plaintiff and other reasonable consumers would not have purchased the product had they known the product was unsafe. Thus, subclass-wide reliance can be inferred. Defendant's false representations and omissions were a substantial factor in Plaintiff's purchase decision and the purchase decisions of subclass members.

151. Plaintiff Rodriguez and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the product if they had known it was unsafe and unfit for use by young children; (b) they overpaid for the product because it is sold at a price premium due to Defendant's false representations and omissions; or (c) they received a product that is worthless for its intended purpose.

152. Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the California Subclass, seeks injunctive relief.

153. CLRA § 1782 NOTICE. On December 8, 2022, a CLRA demand letter was sent to Defendant's headquarters and California registered agent, via certified mail

(return receipt requested).  This letter provided notice of Defendant's violation of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff and for each member of the class within 30 days of receipt, Plaintiff and the class will seek all monetary relief allowed under the CLRA.

## Count VII: Violation of California's False Advertising Law (FAL)
### (on behalf of Plaintiff Rodriguez and the California Subclass)

154.    Plaintiff Rodriguez incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

155.    Plaintiff Rodriguez brings this cause of action on behalf of herself and members of the California Subclass.

156.    As alleged more fully above, Defendant has falsely advertised the Sturdy Potty Seat by falsely representing that the product is safe and fit for use by young children.  In particular, Defendant markets the product with photos of young children using the seat successfully, thereby warranting that the product is safe for this use. Plaintiff Rodriguez relied on this representation.  This representation is false; the Sturdy Potty Seat is not safe for use by young children.  Defendant knew the product is not safe for young children, but failed to include any warning about the defect caused by the pee guard.

157.     Defendant's false representations and omissions were likely to deceive, and did deceive, Plaintiff Rodriguez and reasonable consumers.  Defendant knew that its representations were inaccurate and misleading.

158.    Defendant's misrepresentations were material.  Plaintiff Rodriguez and other reasonable consumers would not have purchased the product had they known the product was unsafe.  Thus, subclass-wide reliance can be inferred.

159.    Defendant's false representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff Rodriguez and subclass members.

160.    Plaintiff and subclass members were injured as a direct and proximate

result of Defendant's conduct because (a) they would not have purchased the product if they had known it was unsafe and unfit for use by young children; (b) they overpaid for the product because it is sold at a price premium due to Defendant's false representations and omissions; or (c) they received a product that is worthless for its intended purpose.

## Count VIII: Fraudulent Omission

### (on behalf of Plaintiffs and the Nationwide Class)

161.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

162.    Plaintiffs bring this count individually and for the Nationwide Class.  In the alternative, Plaintiff Rodriguez brings this cause of action on behalf of herself and the California Subclass, and Plaintiffs Bryan and Christina Kulp bring this cause of action on behalf of themselves and the Pennsylvania Subclass.

163.    As alleged in detail above, Defendant made materially misleading omissions concerning the safety of the Sturdy Potty Seat.  Defendant concealed information concerning the defect caused by the pee guard.

164.    In deciding to purchase consumable products from Defendant, Plaintiffs and the class reasonably relied on Defendant's omissions to form the mistaken belief that the Sturdy Potty Seat was safe for use by young children.

165.    As alleged above, Defendant's fraudulent conduct was knowing and intentional.  The omissions made by Defendant were intended to induce and actually induced Plaintiffs and class members to purchase the Sturdy Potty Seat.  The Plaintiffs would not have purchased the products had they known of the defect.  Class-wide reliance can be inferred because Defendant's omissions were material, i.e., a reasonable consumer would consider them important to their purchase decision.

166.    Defendant had a duty to disclose the defect because it had superior knowledge and access to facts about the defect.  A reasonable consumer could not have expected or known that the product was unsafe for children.

167.    Plaintiffs and class members were injured as a direct and proximate result of Defendant's fraudulent omissions because (a) they would not have purchased the product if they had known it was unsafe and unfit for use by young children; (b) they overpaid for the product because it is sold at a price premium due to Defendant's false representations; or (c) they received a product that is worthless for its intended purpose. Plaintiffs and the class are entitled to damages and other legal and equitable relief as a result.

168.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### Count IX: Unjust Enrichment

### (on behalf of Plaintiffs and the Nationwide Class)

169.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

170.    Plaintiffs bring this count individually and for the Nationwide Class. In the alternative, Plaintiff Rodriguez brings this cause of action on behalf of herself and the California Subclass, and Plaintiffs Bryan and Christina Kulp bring this cause of action on behalf of themselves and the Pennsylvania Subclass.

171.    Plaintiffs and class members purchased Sturdy Potty Seats. They reasonably believed that the seats would function as advertised, and would be fit for their expected ordinary purpose. Plaintiffs and class members did not, and could not, have known that the seats were defective.

172.    Plaintiffs and class members conferred a tangible and material economic benefit upon Defendant by purchasing defective seats.

173.    In exchange for the purchase price, Defendant provided products with an inherent defect, which makes the products unfit and unsafe for their ordinary use.

Defendant knew and appreciated the benefit they incurred from consumers purchasing Sturdy Potty Seats.

174.    Thus, Defendant is aware of, and has retained, the unjust benefit conferred upon them by Plaintiffs and the class members.

175.    Defendant received a direct and unjust benefit, at the Plaintiffs' expense.

176.    Plaintiffs and the class seek restitution.

## VII.  No Adequate Remedy at Law.

177.    Plaintiffs seek damages and, in the alternative, restitution.  Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law.

178.    To begin, the elements of Plaintiffs' equitable claims are different and do not require the same showings as Plaintiffs' legal claims.  For example, to obtain damages as a result of the breach of an express warranty, Plaintiffs must show that they complied with the notice requirement for express warranty claims.  No such requirement exists for Plaintiffs' unjust enrichment claims.  Because obtaining damages requires additional showings not required for restitution, the equitable remedies that Plaintiffs request are more certain than the legal remedies that Plaintiffs request.

179.    As another example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages.  No such requirements exist to obtain restitution.  Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.

180.    Finally, the remedies at law available to Plaintiffs are not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

## VIII.  Jury Demand.

181.    Plaintiffs demand a jury trial on all issues so triable.

## IX.    Prayer for Relief.

182.    Plaintiffs seek the following relief individually and for the proposed class and subclasses:

- An order certifying the asserted claims, or issues raised, as a class action;
- An order appointing Plaintiffs as representatives for the Nationwide Class, Plaintiffs Bryan and Christina Kulp as representatives for the Pennsylvania Subclass, Plaintiff Veronica Rodriguez as representative for the California Subclass, and appointing their counsel as lead counsel for the classes;
- An order awarding Plaintiffs and all other class members damages in an amount to be determined at trial for the wrongful acts of Munchkin;
- A declaration that Sturdy Potty Seats are unfit for ordinary purposes and pose a serious safety risk to consumers;
- An order enjoining Munchkin from engaging in or continuing to engage in the manufacture, marketing, and sale of the defective seats; requiring Munchkin to issue corrective actions including notification, recall, service bulletins, or replacement of the seats; and requiring Munchkin to preserve all evidence relevant to this lawsuit and notify seat owners with whom it comes in contact of the pendency of this and related litigation;
- Nominal damages as authorized by law;
- Restitution as authorized by law;
- Pre- and post-judgment interest;
- Reasonable attorneys' fees and costs, as allowed by law; and
- Any additional relief that the Court deems reasonable and just.

Dated: December 28, 2022            Respectfully submitted,

                                    By: /s/ *Simon Franzini*

                                    Simon Franzini (Cal. Bar No. 287631)

simon@dovel.com
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Alan M. Feldman*
Edward S. Goldis*
Zachary Arbitman*
FELDMAN SHEPHERD
WOHLGELERNTER TANNER
WEINSTOCK & DODIG, LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
F: (215) 567-8333
afeldman@feldmanshepherd.com
egoldis@feldmanshepherd.com
zarbitman@feldmanshepherd.com

*Attorneys for Plaintiffs*

*Pro Hac Vice Application Forthcoming

DocuSign Envelope ID: 28AF51C0-27A7-42E1-B9FD-2ED9E9BA2E86

1  Simon Franzini (Cal. Bar No. 287631)
2  simon@dovel.com
   Jonas B. Jacobson (Cal. Bar No. 269912)
3  jonas@dovel.com
4  Grace Bennett (Cal. Bar No. 345948)
   grace@dovel.com
5  DOVEL & LUNER, LLP
6  201 Santa Monica Blvd., Suite 600
   Santa Monica, California 90401
7  Telephone: (310) 656-7066
8  Facsimile: (310) 656-7069

9  *Attorneys for Plaintiffs*

10

11            **UNITED STATES DISTRICT COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
12

13  Bryan Kulp and Christina Kulp, and        Case No.
    Veronica Rodriguez, each individually
14  and on behalf of all others similarly
    situated,                                 **CLRA Venue Declaration**
15

16                        *Plaintiffs,*
17
    v.
18
19  Munchkin, Inc.,
20
                          *Defendant.*
21

22

23

24

25

26

27

28

                        CLRA Venue Declaration

I, Veronica Rodriguez, declare as follows:

    1.     I am a named Plaintiff in this action.

    2.     In May 2022, I purchased a Munchkin, Inc., Sturdy Potty Seat from a Target in San Bernardino County, California.

    3.     I understand that, because Munchkin's principal place of business is in Los Angeles, California, this a proper place to bring my California Consumer Legal Remedies Act claim.

I declare under penalty of perjury, under the laws of the United States and the State of California, that the foregoing is true and correct to the best of my knowledge.

Signature: _Veronica Rodriguez_

    Veronica Rodriguez

Dated: December 23, 2022

---

1

CLRA Venue Declaration